******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

USSBASY GARCIA *v.* ROBERT COHEN ET AL.
(SC 20285)

Palmer, McDonald, D'Auria, Mullins and Ecker, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant landlords, R and D, for personal injuries that the plaintiff sustained when she slipped and fell on a staircase outside of her apartment building. The plaintiff claimed that the defendants were negligent in failing to keep the steps of the staircase free of dirt and sand and by allowing the surface of the steps to become pitted, worn and uneven. The defendants denied the allegations of negligence and pleaded a special defense that contained four specifications of contributory negligence. At trial, R testified that other individuals helped him with snow removal at the property and that, together, they would remove snow and spread salt and sand on the staircase but that no one would return thereafter to clear the staircase after spreading salt and sand. In light of R's testimony, the plaintiff requested that the trial court instruct the jury that the defendants had a nondelegable duty to maintain the safety of the premises and to submit to the jury three interrogatories that addressed certain grounds on which it could determine liability. The trial court declined to instruct the jury on the nondelegable duty doctrine or to submit the plaintiff's proposed interrogatories, determining that neither was necessary. After the trial court charged the jury on the applicable law, which did not include an explanation regarding the nondelegable duty doctrine, the trial court asked counsel if there were an exceptions to the court's charge, to which the plaintiff's attorney responded, "[o]ther than what I had filed previously, no . . . ." The jury subsequently returned a verdict for the defendants, and the trial court denied the plaintiff's motions to set aside the verdict and for a new trial, and rendered judgment for the defendants. The plaintiff appealed to the Appellate Court, claiming that the trial court had improperly rejected her request to charge and improperly failed to instruct the jury on the defendants' nondelegable duty to maintain the premises. The Appellate Court affirmed the trial court's judgment, concluding that the plaintiff's claim of instructional error was not reviewable. The Appellate Court reasoned that the general verdict rule applied because the plaintiff did not object when the trial court declined to submit her proposed interrogatories to the jury and did not specifically claim on appeal that the trial court improperly failed to submit her interrogatories to the jury. On the granting of certification, the plaintiff appealed to this court, claiming that the general verdict rule did not apply because she sought to submit properly framed interrogatories to the trial court and plainly conveyed her objection to the court's denial of her request. The plaintiff further claimed that, on appeal to the Appellate Court, she was not required to assert as an independent claim of error that the trial court declined to submit her proposed interrogatories to the jury. *Held*:

1. The Appellate Court incorrectly concluded that the general verdict rule precluded it from reviewing the plaintiff's claim of instructional error: the plaintiff made every reasonable effort to avoid the application of the rule by filing interrogatories, eliciting the trial court's justification for its decision not to submit them to the jury, and renewing her objection after the trial court charged the jury on the applicable law, and, although the plaintiff did not use the precise language, "I object," she alerted the court to her claim of instructional error, and the court explained the reasoning for its decision while there was still an opportunity for correction; moreover, the interrogatories were properly framed even though they did not address all four specifications of contributory negligence in the special defense, as one of the interrogatories encompassed the four factual allegations in the special defense that could have resulted in a finding that the plaintiff's negligence contributed to her injuries, the single defense that the defendants raised, and the interrogatories would have shed light on the verdict, as they could have eliminated any negligence attributable to the plaintiff and fleshed out whether and on

what grounds the jury attributed any negligence to the defendants; furthermore, the jury's consideration of the plaintiff's allegation of negligence and the defendants' special defense of contributory negligence was intertwined with the plaintiff's claim that the trial court improperly declined to instruct the jury on the nondelegable duty doctrine, as the jury could have concluded, without having had the benefit of an instruction on that doctrine, that the individuals who helped R remove the snow, rather than the defendants, acted negligently, and, therefore, the jury had no untainted route to its verdict.

2. The Appellate Court incorrectly concluded that the plaintiff's instructional error claim was not reviewable on the ground that she had failed to raise an independent claim of error on appeal with respect to the trial court's decision not to submit her proposed interrogatories to the jury: the plaintiff clearly preserved her claim, as she plainly alerted the trial court to her position by filing the interrogatories, addressing the trial court's decision not to submit them to the jury, and raising her objection again after the trial court charged the jury on the applicable law; moreover, the plaintiff made every reasonable effort to protect herself from the consequences of a general verdict and had no reason to anticipate that that rule would prevent review of her instructional error claim until the Appellate Court raised the issue of the general verdict rule at oral argument before that court.

Argued November 20, 2019—officially released March 17, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where certain counts of the complaint were withdrawn; thereafter, the case was tried to the jury before *Dubay, J.*; verdict and judgment for the defendants, from which the plaintiff appealed to the Appellate Court, *Lavine, Prescott* and *Bishop, Js.*, which affirmed the judgment of the trial court, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*John Serrano*, for the appellant (plaintiff).

*Keith S. McCabe*, for the appellees (defendants).

*Opinion*

D'AURIA, J. In this negligence action, a jury returned a verdict finding the defendants, Robert Cohen and Diane Cohen,[1] not liable as landlords for injuries the plaintiff, Ussbasy Garcia, suffered when she slipped and fell on the staircase outside of her apartment building. The plaintiff appealed to the Appellate Court, claiming that the trial court improperly rejected her request to charge and to instruct the jury that, the defendants, as the possessors of real property, had a nondelegable duty to maintain the premises. *Garcia* v. *Cohen*, 188 Conn. App. 380, 381–82, 204 A.3d 1245 (2019). The Appellate Court declined to review the plaintiff's claim, concluding that the general verdict rule applied because the plaintiff had failed to object when the trial court denied her request to submit her proposed interrogatories to the jury. Id., 386. Additionally, the Appellate Court concluded that the plaintiff should have made, but failed to do so, an independent claim of error on appeal on the basis of the trial court's denial of her request to submit her proposed interrogatories to the jury. Id., 386–87.

We disagree with the Appellate Court's conclusion that the general verdict rule bars appellate review of the plaintiff's jury instruction claim. The general verdict rule does not apply in the present case because the plaintiff had requested that the trial court submit her properly framed interrogatories to the jury and had objected when it denied her request. She properly framed her interrogatories by submitting questions addressing her claim of negligence and the defendants' denial of negligence and special defense of contributory negligence. The claims of negligence and contributory negligence are so intertwined with the plaintiff's nondelegable duty jury charge claim on appeal that the general verdict rule does not bar review. Additionally, the plaintiff was not required on appeal to assert an independent claim of error on the basis of the trial court's rejection of her request to submit the interrogatories to the jury. Rather, the plaintiff's submission of interrogatories and her objection upon the court's refusal to submit them to the jury is a defense to application of the general verdict rule, not an independent claim of error. For these reasons, we reverse the judgment of the Appellate Court and remand the case to that court to undertake a review of the trial court's denial of the plaintiff's request for a jury instruction on the nondelegable duty doctrine.

The following undisputed facts and procedural history, as contained in the record and the Appellate Court's opinion, are relevant to this appeal. In the middle of winter, the plaintiff exited her second floor rental apartment shortly before noon carrying a basket of laundry. She went out the rear exit and descended the exterior staircase. Before reaching the bottom of the staircase, she slipped and fell, fracturing her left ankle

and tearing her left ankle deltoid ligament. She testified that she slipped because the fourth step had a lot of sand on the surface and was not safe. The plaintiff brought a premises liability action, alleging that her landlords, the defendants, negligently and carelessly (1) failed to maintain the steps clean, clear, and free of dirt and sand, (2) allowed the surface of the steps to become pitted, worn, and uneven, and (3) failed to post a notice or otherwise warn of the slippery condition of the steps.[2] The defendants denied the allegations in the complaint and asserted a special defense alleging that the plaintiff's injuries resulted from "her own negligence and carelessness . . . ."

A jury trial ensued in which Robert Cohen testified about how he maintained the property during the winter months. He testified that three or four individuals helped him with snow removal at the property. Together, they would remove snow after a snowstorm and spread salt and sand on the stairs. Robert Cohen also testified that, after spreading salt and sand on the stairs, no one would return in the winter to clear off the stairs.

In light of that testimony, the plaintiff submitted a proposed jury instruction regarding the defendants' nondelegable duty to maintain the safety of the premises.[3] The plaintiff also proposed that the trial court submit three interrogatories to the jury. The proposed interrogatories addressed three grounds on which the jury could have determined liability: (1) Were the plaintiff's fall and injuries caused by the defendants' negligence and carelessness in failing to maintain the steps clean, clear and free of dirt and sand? (2) Were the plaintiff's fall and injuries caused by the defendants' negligence in allowing the steps to become pitted, worn and uneven? And (3) were the plaintiff's fall and injuries caused by her own failure to exercise care under the circumstances and conditions then existing?

The trial consisted of two days of evidence. The trial court began the second, and last, day of trial by asking if the attorneys had any preliminary matters to discuss. Because the court would instruct the jury and submit the case to it for deliberation after the conclusion of evidence later that day, the plaintiff's attorney responded: "Just the fact that I had filed jury instructions—proposed jury instructions and jury interrogatories, and my understanding is, the court is going to disallow those." The court replied by confirming the plaintiff's understanding and explaining: "I don't think the interrogatories are necessary, and I don't think that the nondelegable duty charge is necessary because I'm specifically charging the jury—or I intend to specifically . . . charge the jury on the duties that are owed to an invitee." The plaintiff's attorney answered: "Very well. Thank [you]."[4]

As it indicated it would, the trial court, after the close

of evidence, charged the jury on the applicable law. That charge included an explanation of the duty owed to an invitee but not an explanation of the nondelegable duty doctrine. Following the instructions, the trial court asked the attorneys if there were any exceptions to the charge. The plaintiff's counsel answered: "Other than what I had filed previously, no, Your Honor." The jury proceeded to deliberate. During deliberations, the jury submitted the following question to the court: "How do we indicate on the [verdict] form that we find neither party negligent?" The court instructed the jury that if it had found neither party negligent, it would have to return a defendants' verdict. The jury then returned a defendants' verdict.[5]

After trial, the plaintiff filed motions to set aside the verdict and for a new trial. The trial court denied both motions. The plaintiff then appealed to the Appellate Court, claiming that the trial court had improperly rejected her request to charge and improperly failed to instruct the jury on the defendants' nondelegable duty to maintain the premises. *Garcia* v. *Cohen*, supra, 188 Conn. App. 381. During oral argument, the Appellate Court asked the parties whether the general verdict rule applied and later permitted the parties to submit supplemental briefs on the issue. Id., 384. Having raised the issue sua sponte, the Appellate Court concluded that the general verdict rule indeed applied, reasoning that, although the plaintiff had requested that the trial court submit her proposed interrogatories to the jury, she failed to object when the trial court denied the request. Id., 386. Additionally, the Appellate Court concluded that the plaintiff had not specifically claimed on appeal that the trial court improperly failed to submit her interrogatories to the jury. Id., 386–87. Accordingly, the Appellate Court deemed the instructional error not reviewable. Id., 387.

The plaintiff then petitioned this court for certification to appeal, which we granted on two issues: (1) whether the Appellate Court properly held that the general verdict rule applies when a plaintiff's proposed jury interrogatories are rejected by the trial court and the plaintiff thereafter does not object when the case is submitted to the jury without jury interrogatories; and (2) whether the Appellate Court correctly concluded that the plaintiff did not claim on appeal that the trial court improperly failed to submit her interrogatories to the jury. *Garcia* v. *Cohen*, 331 Conn. 921, 205 A.3d 567 (2019).

I

The plaintiff claims that the general verdict rule should not apply because she submitted properly framed interrogatories to the court and that, even though her counsel did not use the talismanic words, "I object," she plainly conveyed her objection to the court's denial of her request on the record, which the

court understood. She also claims that, as a predicate to review of her instructional claim, she was not required to assert an independent claim of error on the basis of the trial court's refusal to submit her proposed interrogatories to the jury. Her reliance on the trial court's denial of properly framed interrogatories, she argues, amounts to a defense against application of the general verdict rule. We agree with the plaintiff.

The plaintiff's challenges to both of the Appellate Court's conclusions—that the general verdict rule applies and that a failure to raise an independent claim of error on the basis of a refusal to submit jury interrogatories precludes review of the plaintiff's jury charge claim—present questions of law over which our review is plenary. *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 738–39, 183 A.3d 611 (2018).

"Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial." (Internal quotation marks omitted.) *Tetreault* v. *Eslick*, 271 Conn. 466, 471–72, 857 A.2d 888 (2004).

We have said that the general verdict rule applies to the following five situations: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories

of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993).

The parties agree, and the Appellate Court concluded, that the present case clearly falls within scenario number four: the defendants denied the negligence allegation in the complaint and pleaded the special defense of contributory negligence. See *Garcia* v. *Cohen*, supra, 188 Conn. App. 385. Therefore, the general verdict rule would apply if the appellant has failed to provide a record on which reversible error may be predicated. Specifically, in the absence of interrogatories, the rule would prevent review of the plaintiff's claim of error because an appellate court would be unable to determine whether the jury decided for the defendants on the basis of the defendants' denial of the complaint or on their special defense. Thus, the verdict would have to stand. *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 375, 727 A.2d 1245 (1999).

However, parties can create a record to avoid application of the general verdict rule by submitting interrogatories to the jury that elicit the specific grounds for the verdict. See, e.g., *Pedersen* v. *Vahidy*, 209 Conn. 510, 514, 552 A.2d 419 (1989). "It follows that where the court has denied a proper request for interrogatories . . . the general verdict rule does not apply so as to preclude appellate review of error relating to any ground upon which the jury may have rested its verdict and to which an appropriate interrogatory has been directed." Id. The parties do not dispute that the plaintiff proposed interrogatories to the trial court and that the court declined to submit them to the jury. However, the defendants maintain that the rule applies because (1) the plaintiff failed to object when the court denied her request for the submission of her interrogatories to the jury, and (2) even if she had objected, she failed to submit *properly framed* interrogatories.

### A

The defendants contend that the general verdict rule should apply because the plaintiff failed to object when the trial court declined to submit her interrogatories to the jury. The plaintiff responds that she preserved her objection because she conveyed her position to the trial court, which, in turn, acknowledged her position. We agree with the plaintiff.

The defendants rely on *Malaguit* v. *Ski Sundown, Inc.*, 136 Conn. App. 381, 44 A.3d 901, cert. denied, 307 Conn. 902, 53 A.3d 218 (2012), for the proposition that "the failure of the [plaintiff] to object to jury deliberation without interrogatories is the functional equivalent

of a failure to request interrogatories." (Internal quotation marks omitted.) Id., 387. *Malaguit* quoted another Appellate Court decision, *Gajewski* v. *Pavelo*, 32 Conn. App. 373, 381, 629 A.2d 465 (1993), rev'd, 229 Conn. 829, 643 A.2d 1276 (1994), from which this language apparently originated. *Gajewski* is distinguishable because, in that case, not only did the parties fail to submit proposed interrogatories to the trial court, but the parties did not object to the jury's deliberating without any interrogatories whatsoever. See *Gajewski* v. *Pavelo*, 229 Conn. 829, 834, 643 A.2d 1276 (1994) (parties had not completed preparing interrogatories and did not object to court's allowing jury to deliberate without them); see also *Malaguit* v. *Ski Sundown, Inc.*, supra, 387 ("[t]he plaintiff did not object to the court's decision not to submit interrogatories to the jury").

We are unpersuaded by the defendants' reliance on *Gajewski* because that scenario differs wholly from the scenario in the present case, in which a party has proposed jury interrogatories but the trial court has declined to submit them to the jury. Nor does footnote 4 in *Tetreault* v. *Eslick*, supra, 271 Conn. 466, which the parties did not cite, preclude our review. In *Tetreault, the defendants* filed interrogatories and requested that they be submitted to the jury, but it was *the plaintiffs* who claimed instructional errors on appeal and sought to avoid application of the general verdict rule. Id., 470. During the trial and on the record, the court acknowledged the defendants' request for interrogatories (the subject of an off-the-record conference in chambers) and asked the plaintiffs' counsel whether he had any feeling one way or the other about the submission of interrogatories. Id., 470 n.4. The plaintiffs' counsel responded: "Well, I thought Your Honor had already decided—made up your mind on that." (Internal quotation marks omitted.) Id. The plaintiffs did not advocate for the interrogatories to be submitted to the jury and failed to object to the court's decision not to submit them. Id. The distinction of which party submits interrogatories matters because it is an appellant's responsibility to provide a record on which reversible error can be predicated; *Curry* v. *Burns*, supra, 225 Conn. 790; and the party seeking to avoid application of the general verdict rule also is responsible for making "every reasonable effort to protect himself from the consequences of such a verdict by seeking to use interrogatories." *Pedersen* v. *Vahidy*, supra, 209 Conn. 517. In *Tetreault*, the plaintiffs' failure to file their own interrogatories, their failure to make a record in support of the opposing parties' proposed interrogatories, and their failure to object to the court's decision not to submit them did not amount to making every reasonable effort to prevent the application of the general verdict rule.

In the present case, the plaintiff filed proposed interrogatories, addressed the court's denial of their submis-

sion to the jury on the record, and renewed her objection following the jury charge. The plaintiff raised the issue of the court's denial of the interrogatories on the record after an apparent off-the-record discussion. This spurred the court to state on the record the justifications for its denial. Specifically, the court asked if the attorneys had any matters to discuss. The plaintiff's attorney responded: "Just the fact that I had filed jury instructions—proposed jury instructions and jury interrogatories, and my understanding is, the court is going to disallow those." The court replied: "I don't think the interrogatories are necessary . . . ." Although the plaintiff did not use the precise language, "I object," she alerted the court to her claim of error, and the court explained its reasoning while there was still an opportunity for correction. See *State* v. *Sandoval*, 263 Conn. 524, 556, 821 A.2d 247 (2003) ("purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it" (internal quotation marks omitted)).

Additionally, the plaintiff in the present case renewed her objection to the court's denial of her request to submit her proposed interrogatories to the jury after the court had charged the jury on the applicable law. At that time, the court inquired if the parties had any exceptions to the charge. The plaintiff responded, "Other than what I had filed previously, no, Your Honor."[6] The record establishes that the plaintiff functionally raised the issue by putting opposing counsel and the trial court on notice of her objection to the court's refusal to submit her interrogatories to the jury. See *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 729 n.12, 917 A.2d 540 (2007) (addressing issue "functionally" raised by party in trial court proceedings). We conclude that the plaintiff, who was responsible for creating the record, made every reasonable effort to avoid the application of the general verdict rule by filing interrogatories, eliciting the court's justification on the record for its decision not to submit them to the jury, and renewing an objection to the court's denial while there was still an opportunity for correction. The general verdict rule does not apply to preclude review of her instructional error claim on the basis of her failure to object to the court's decision not to submit the interrogatories to the jury.

B

The defendants contend next that the interrogatories were not properly framed because they (1) failed to address each specification of their special defense, and (2) would not have shed light on the verdict and could not have provided the jury with an untainted route by which it could have found the defendants not liable. We agree with the defendants that it is not the *mere submission* of interrogatories that enables a

reviewing court to determine the grounds for the jury's decision. See, e.g., *Sutera* v. *Natiello*, 189 Conn. App. 631, 639, 208 A.3d 1241, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019); see id., 636 n.4 (general verdict rule applied because interrogatories merely mirrored verdict form and failed to disclose grounds for jury's decision); *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 465, 661 A.2d 126 (1995) (general verdict rule applied because interrogatories related solely to defendant's special defense, did not address plaintiff's medical malpractice claim, and, therefore, did not reveal whether jury found for or against plaintiff on that claim), aff'd, 237 Conn. 25, 675 A.2d 844 (1996). Rather, avoiding the general verdict rule requires the submission of *properly framed* interrogatories that, if used, would have clarified the basis for the jury's verdict. See *Perez* v. *Cumba*, 138 Conn. App. 351, 365, 51 A.3d 1156 (general verdict rule did not apply because, had trial court submitted proposed interrogatories to jury, grounds for verdict would have been ascertainable), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012). The Appellate Court in the present case set forth the requirement that the interrogatories must be properly framed, but it was not on that ground that it declined to reach the plaintiff's claim of instructional error. See *Garcia* v. *Cohen*, supra, 188 Conn. App. 386–87 (concluding that general verdict rule applied because plaintiff failed to object to trial court's decision not to submit proposed interrogatories to jury and that instructional error claim was not reviewable because plaintiff failed to raise independent claim on appeal challenging court's decision as to her interrogatories). On appeal to this court, the defendants assert two theories as to why the plaintiff failed to submit properly framed interrogatories.

1

First, the defendants assert that the plaintiff's proposed interrogatories were not properly framed because they did not address all of the specifications of the defendants' special defense. The proposed interrogatories only asked whether the plaintiff failed to "exercise that degree of care that an ordinary person would have exercised while using the premises under the circumstances and conditions then existing . . . ." In the defendants' view, the interrogatories were not properly framed because they addressed only whether the plaintiff exercised reasonable care and failed to address the other three specifications of their special defense: whether the plaintiff failed to watch where she stepped, failed to step over a dangerous condition, and failed to be attentive. Under our governing precedent, we disagree with the defendants that the interrogatories needed to address all four specifications separately.

To determine whether the general verdict rule mandates submission of interrogatories that address each specification or factual allegation in support of a special

defense, we look to our seminal case on the rule, *Curry* v. *Burns*, supra, 225 Conn. 801. In *Curry*, we discussed the development of the general verdict rule in order to clarify the rule and to establish limits for its application. In doing so, we overruled our previous case law that had expanded application of the rule. See id., 792 (overruling *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208 (1987), because "*Finley* extended the reach of the general verdict rule beyond appropriate bounds . . . to the extent that [it] applied the rule to the denial of elements of a single cause of action"). We explained that limiting application of the general verdict rule would provide a "substantial degree of certainty as to when it applies and when it does not. Otherwise, trial counsel, in the hurry of the trial, may be forced to err on the side of prudence by requesting interrogatories whenever there are factually distinct issues that have been litigated, even though those issues stem solely from denials of different factual allegations of the complaint." *Curry* v. *Burns*, supra, 800.

Specifically, we held that the rule did not apply in *Curry* because the circumstances fell squarely outside any of the five enumerated scenarios in which the general verdict rule applies. Id., 801. In *Curry*, the plaintiff had alleged a violation of the defective highway statute, General Statutes § 13-144, and the defendant answered by denying liability and claiming that the plaintiff had failed to comply with the statute's notice requirement. Id., 785. We concluded that the rule did not apply because the defendant's denials—of liability and compliance by the plaintiff with the notice requirement—did not respond to separate causes of action or create separate defenses. Id., 801. Rather, the denials constituted denials of separate *factual* allegations in support of one denial of one cause of action. Id. By contrast, when the denials respond to separate causes of action or create one or more special defenses, the rule does apply because the reviewing court would be unable to determine whether the plaintiffs failed to prove their case, the defendants succeeded in proving their special defense, *or both*. See *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 374–75; see id., 370, 372, 379 (enumerating five scenarios in which general verdict rule applies and concluding that rule applied based on defendant's denial of complaint and assertion of three special defenses in prior action between same parties).

In the present case, the defendants' theory would have us cast their four specifications of contributory negligence as four separate defenses requiring four separate interrogatories to determine upon which special defense the jury could have reached its verdict. That assertion directly conflicts with our holding and rationale in *Curry*. One of the plaintiff's proposed interrogatories would have asked the jury to determine whether the plaintiff had exercised a reasonable degree

of care under the existing circumstances and conditions on the stairs. The interrogatory encompassed the four factual allegations that could have resulted in a jury finding that the plaintiff's negligence contributed to her injuries—the single special defense raised. Under *Curry*, that is enough. We decline to adopt the defendants' view, which would have required the plaintiff to pose four separate interrogatories on contributory negligence alone, a requirement that would serve only to confuse the jury and to render the "already difficult task of trial management, by court and counsel, unnecessarily burdensome." *Curry* v. *Burns*, supra, 225 Conn. 801.

2

Beyond the reasons why the Appellate Court declined to address the plaintiff's claim of instructional error, the defendants also claim that the plaintiff's proposed jury interrogatories were not properly framed because, even if they had been submitted, they would not have shed light on the verdict, and, ultimately, the jury had an untainted route by which to reach its verdict. We do not agree. The interrogatories would have shed light on the verdict, and there was no untainted route to reach the verdict because the "jury's consideration of all the bases that theoretically could support its general verdict is intertwined" with the instructional error claim on appeal. *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 687, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

In reaching our conclusion, we look to cases that lie directly at the intersection of a claim of instructional error and application of the general verdict rule. In *MacDermid, Inc.* v. *Leonetti*, supra, 328 Conn. 750, we stated that "the general verdict rule precludes an appeal claiming instructional error when the jury could have decided the case on a ground not implicated by the challenged instruction." In *MacDermid, Inc.*, "[t]he plaintiff's unjust enrichment claim not only relied on the defendant's intentions not to release his workers' compensation claim and to do all that was necessary to carry that into effect, but also on other misrepresentations contained in the [parties' employment termination] agreement [that the defendant would release his claim], such as the statements indicating the defendant believed that he had sufficient time to review the agreement and that $70,228.51 was more than he was entitled to receive." Id., 751–52. Thus, the plaintiff presented separate legal theories of unjust enrichment in one count, implicating *Curry*'s scenario number three, under which the general verdict rule applies. Id., 751. On appeal, the defendant argued that the trial court improperly instructed the jury on unjust enrichment. Id. We concluded that the general verdict rule precluded review of the defendant's instructional error claim because the "defendant [had] not request[ed] jury inter-

rogatories that would [have] properly establish[ed] the ground on which the jury made its decision . . . ." Id., 752. The interrogatories that the defendant requested failed to address the separate *legal* theories of unjust enrichment under which the jury could have reached its verdict.

In other cases, the general verdict rule has *not* precluded review of an instructional error claim. For example, in both *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, supra, 115 Conn. App. 680, and *Perez* v. *Cumba*, supra, 138 Conn. App. 351, the Appellate Court did not apply the general verdict rule. In *Beckenstein Enterprises-Prestige Park, LLC*, supra, 684, 686, the defendants denied the allegations of each of the three counts in the plaintiffs' complaint that were submitted to the jury and asserted nine special defenses. On appeal from the judgment in favor of the defendants, the plaintiffs argued that the trial court improperly charged the jury that the statute of limitations narrowed the plaintiffs' actionable claims. Id., 683. The Appellate Court concluded that the general verdict rule did not preclude review of the instructional claim because the statute of limitations instruction would have impacted not only the jury's consideration of the defendants' actions as a basis for liability but also would have undermined the jury's consideration of the defendants' other special defenses because it limited the time frame that the jury could consider in its determination of those defenses. Id., 686–87. "Because the jury's consideration of *all* the bases that theoretically could [have] support[ed] its general verdict [was] intertwined with the statute of limitations instruction, the general verdict rule [did] not bar our review of the plaintiffs' claim that attack[ed] this instruction." (Emphasis added.) Id., 687.

In *Perez*, "the defendant denied the plaintiff's allegations of negligence and raised the special defense of superseding cause . . . ." *Perez* v. *Cumba*, supra, 138 Conn. App. 362. During trial, the court declined to submit to the jury interrogatories that the plaintiff had proposed. Id., 360, 365. Those interrogatories addressed whether the defendant had failed to use reasonable care to protect her invitees (negligence) and, if the defendant was negligent, whether the harm to the decedent was within or outside the scope of the risk created by the defendant's negligence (superseding cause). Id., 364–65. On appeal after a defendant's verdict, the plaintiff argued that the court's defective premises instruction requiring notice was unwarranted and contrary to precedent. Id., 365–66. The Appellate Court concluded that the general verdict rule did not preclude review of the instructional claim because "the plaintiff [had] presented interrogatories intended to properly frame the issue of superseding cause, thereby fleshing out the grounds for the jury's verdict . . . ." Id., 365. Specifically, had the trial court submitted the interrogatories, it would have been clear whether the jury found in favor

of the defendant on the basis of her special defense or the plaintiff's failure to prove that the defendant was negligent. Because the plaintiff had "made every reasonable effort to protect" herself from the general verdict rule, the trial court's failure to submit the interrogatory should not have precluded review of the plaintiff's claim. See, e.g., *Pedersen* v. *Vahidy*, supra, 209 Conn. 517.

We find the facts of the present case more in line with *Beckenstein Enterprises-Prestige Park, LLC*, and *Perez*. The plaintiff pleaded a single cause of action (negligence). The defendants denied the plaintiff's single cause of action and asserted a single special defense (contributory negligence). During trial, Robert Cohen testified that he hired individuals to remove snow from the plaintiff's steps and spread salt and sand on them. On the basis of that testimony, the plaintiff requested that the trial court instruct the jury that the defendants had a nondelegable duty to the plaintiff—the responsibility to maintain the plaintiff's steps in a safe condition such that the defendants could not avoid liability by hiring others to remove snow and spread salt and sand. The trial court declined to instruct the jury on the nondelegable duty doctrine. It is this ruling the plaintiff wanted the Appellate Court to review.

The jury's consideration of the plaintiff's allegation of negligence and the defendants' assertion of contributory negligence is intertwined with the plaintiff's claim on appeal that the trial court improperly declined to give a nondelegable duty charge. On the basis of Robert Cohen's testimony that he hired workers for snow removal and sanding, it is possible that the jury could have concluded that the snow removal team, rather than the defendants, acted negligently, and for that reason found that the defendants had *not* acted negligently or had acted less negligently than the plaintiff. The plaintiff argued before the Appellate Court that the jury did not have the benefit of being instructed by the trial court that, under the nondelegable duty doctrine, the defendants were liable for any negligence attributed to the snow removal team. See, e.g., *Smith* v. *Greenwich*, 278 Conn. 428, 460, 899 A.2d 563 (2006); see also footnote 3 of this opinion. Although the trial court instructed the jury on the duties that the defendants owed to the plaintiff as a tenant-invitee, the invitee instruction itself (the defendant has a duty to maintain and a duty to warn) is distinct from the nondelegable duty instruction (the defendant cannot avoid liability by hiring others to maintain the premises).[7] If the jury found that the snow removal crew had been negligent, that negligence under the nondelegable duty doctrine would have resulted in some allocation of liability to the defendants. The jury's estimation and allocation of negligence are intertwined with the nondelegable duty instruction, and the jury had no untainted route to the verdict.

Additionally, the interrogatories would have shed light on the verdict. The interrogatories would have elicited three responses from the jury—whether the defendant was negligent in maintaining the steps by keeping them clean and clear, whether the defendants were negligent in repairing the steps, and whether the plaintiff herself was negligent. The interrogatories could have eliminated any negligence attributable to the plaintiff and fleshed out whether and on what grounds the jury attributed any negligence to the defendants. The interrogatories separated out any negligence attributable to the defendants into two questions—whether the fall and injury resulted from the defendants' negligence in failing to clear dirt and sand from the steps, and whether the fall and injury resulted from the defendants' negligence in allowing the steps to become worn and uneven. The interrogatories simply cannot be cast, as the defendants argue, as not properly framing the bases on which the jury reached its verdict. They addressed head on the single allegation in the complaint and the special defense asserted by the defendants. The interrogatories did not need to address the various factual specifications supporting the special defense because the specifications did not create more than one separate defense. See *Curry* v. *Burns*, supra, 225 Conn. 801. Because the interrogatories would have shed light on the jury's bases for its verdict, and because the instructional claim of error on appeal is intertwined with both the cause of action and the special defense, the general verdict rule does not preclude review of the plaintiff's claim of instructional error. This conclusion is consistent with the general principles we set forth in *Curry* of balancing the often competing interests of providing an adequate record for review and easing the burden on courts and counsel by applying the rule only to clearly established scenarios. See id.

The defendants again rely on *Malaguit*, which they assert is directly on point. *Malaguit* is easily distinguishable. In *Malaguit*, the plaintiff brought a negligence claim against the owner and operator of a ski area, alleging that the defendant created a hazard not inherent in the sport of skiing by building and maintaining a snow jump. *Malaguit* v. *Ski Sundown, Inc.*, supra, 136 Conn. App. 383. The defendant denied the negligence allegation in its answer and asserted two special defenses: (1) General Statutes § 29-212 (skier's assumption of risk statute) completely barred any recovery, and (2) the plaintiff's own negligence caused his damages. Id. During trial, the plaintiff objected to the court's proposed jury instruction on § 29-212, but the court rejected the plaintiff's argument and gave the instruction. Id., 384. The plaintiff also proposed jury interrogatories but did not object when the court declined to submit them to the jury. Id., 386–87. The jury returned a verdict in favor of the defendant. Id., 385.

On appeal, the plaintiff in *Malaguit* claimed that the trial court improperly (1) charged the jury on § 29-212, (2) declined to provide the jury with the legislative history of § 29-212, (3) failed to deliver an evidence spoliation instruction, and (4) declined to instruct the jury that exculpatory language in documents the defendant had provided to the plaintiff should be disregarded. Id., 382–83. In response, the defendant asserted that the general verdict rule prohibited review of the plaintiff's claims. Id., 383.

The Appellate Court in *Malaguit* agreed with the defendant that the general verdict rule applied in part because "none of the plaintiff's claims on appeal raise[d] the possibility of an error that would [have] relate[d] to all of the possible grounds on which the jury's verdict might [have] [been] based"—the jury therefore had an untainted route by which to reach its verdict. Id., 389. Specifically, the plaintiff's claims on appeal that the trial court improperly instructed the jury on § 29-212 and improperly declined to provide the legislative history of the statute "relate[d] only to the defendant's special defense" under § 29-212. Id. The claim of error did not relate to the contributory negligence special defense or the denial of the negligence cause of action, which were both grounds that provided the jury with an untainted route to reach its verdict. Id.

In the present case, the jury had before it one cause of action and one special defense. Its task was to determine whether the negligent actions of the defendants or the plaintiff resulted in the plaintiff's injuries. Robert Cohen's testimony regarding the snow team's responsibility to clear and sand the plaintiff's steps implicated possible negligence on the part of that third party and was "intertwined" with the question of the defendants' liability for negligence. The fact that a third party's negligent actions could have contributed to the plaintiff's fall relates to the degree of negligence the jury might have attributed to the defendants. The negligence determinations may have been different if the jury had been instructed that any negligence by the snow removal team should have been attributed to the defendants, a difference that could have tipped the balance in the defendants' favor. Therefore, unlike in *Malaguit*, the plaintiff's instructional claim of error on appeal relates to both the denial of the cause of action and the special defense—the interrogatories were properly framed because they would have left the jury with no untainted route to the verdict.

## II

Finally, the plaintiff argues that the Appellate Court incorrectly concluded that her instructional claim was not reviewable because she failed to raise an independent claim of error on appeal regarding the rejected interrogatories. We agree.

The plaintiff's claim of instructional error in the Appellate Court maintained that the trial court improperly had rejected her request to charge the jury on the defendants' nondelegable duty to maintain the premises. *Garcia* v. *Cohen*, supra, 188 Conn. App. 381–82. She did not independently claim that the trial court improperly denied her request to submit her proposed interrogatories to the jury. During oral argument before the Appellate Court, the panel "asked [if] the appeal was controlled by the general verdict rule and invited counsel to submit supplemental briefs on the question." Id., 384. In her brief, the plaintiff argued that the general verdict rule should not apply because she had filed jury interrogatories designed to avoid the application of the rule. The defendants argue before this court that the plaintiff should have raised as an independent claim of error— but did not—that the trial court improperly rejected the plaintiff's request to submit interrogatories to the jury and that that failure should prevent review of the plaintiff's instructional claim. We disagree in accordance with our reasoning in *Pedersen* v. *Vahidy*, supra, 209 Conn. 517.

In *Pedersen*, the defendant filed a motion to set aside the verdict that included an instructional error claim but "did not mention the refusal to submit his interrogatories." Id., 517. The trial court denied the motion to set aside the verdict, and the defendant appealed, claiming that the trial court had improperly instructed the jury and failed to grant a mistrial or to give a curative instruction as to certain remarks by the plaintiff's counsel during argument. Id., 511–12. In the appeal, the defendant "[did] not claim [the] erroneous [refusal to submit interrogatories] as an independent ground for seeking a new trial but as a reason for not applying the general verdict rule to bar review of the charge upon informed consent." Id., 517. We determined that the defendant had no reason to anticipate that the general verdict rule would be invoked to prevent review of his claim of error, given that he had "made every reasonable effort to protect himself from the consequences of such a verdict by seeking to use interrogatories." Id. We concluded that his failure to make an independent claim of error on the basis of the rejection of the interrogatories "[did] not bar [him] from plenary review of his claimed error." Id.

The same reasoning applies to the present case because the plaintiff *plainly* alerted the trial court to her position, including in her motion to set aside the verdict (as the plaintiff in *Pedersen* did not). Here, the plaintiff filed interrogatories, addressed the court's decision not to submit them to the jury on the record, and raised her objection again after the court had charged the jury on the applicable law. She made every reasonable effort to protect herself from the consequences of a general verdict. Until the Appellate Court raised the issue of the general verdict rule at oral argument, the plaintiff had no

reason to anticipate that the rule would prevent review of her instructional error claim. Her failure to assign an independent claim of error to the trial court's refusal to submit interrogatories does not, in our view, preclude review of her instructional claim, which she clearly did preserve. Accordingly, the Appellate Court incorrectly concluded that the plaintiff's instructional error claim was not reviewable.[8]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the plaintiff's claim of instructional error.

In this opinion the other justices concurred.

[1] We refer to the Cohens collectively as the defendants and name them individually as necessary.

[2] The complaint contained two additional counts, including a violation of the municipal housing code and a violation of the state housing code under General Statutes § 47a-7. The plaintiff later withdrew those counts, and the jury heard evidence and issued a verdict only on the premises liability claim.

[3] The plaintiff's proposed instruction by and large drew from the Connecticut Civil Jury Instructions, § 3.9-14A, on the nondelegable duty to invitees and cited Supreme Court and Appellate Court cases as authority. The plaintiff's proposed jury instruction provided: "The defendant, Robert Cohen, as the one in control of the premises, had what we call a nondelegable duty to maintain the safety of the premises. This means that he owed a duty to exercise ordinary care to maintain the premises in a reasonably safe condition. The plaintiff, Ussbasy Garcia, had no duty to maintain the premises in a safe condition.

"Although the defendant may contract out the performance of that duty, he may not contract out ultimate legal responsibility. In other words, the defendant is responsible for the damages to which the plaintiff may be entitled as a result of his negligence, and he cannot escape liability for any such injury by claiming he had contracted with someone else to maintain the premises in a reasonably safe condition." See, e.g., *Smith* v. *Greenwich*, 278 Conn. 428, 460, 899 A.2d 563 (2006) ("the party in control of a premises . . . has . . . a nondelegable duty to maintain the safety of those premises").

[4] This exchange suggests that the court and the parties had discussed the proposed instructions and the court's charge earlier, perhaps at a charge conference in chambers or otherwise off the record. We do not suggest that this practice is inappropriate—especially at a time when the Judicial Branch suffers from shortages in courtroom staff. The practice has its perils, however, if it leaves a reviewing court without a clear record. Even though we ultimately conclude that the record is sufficient for review, the cryptic back and forth between the parties and the court once they were back on the record illustrates how important it is that the parties and the court are explicit about the areas over which there is disagreement. It is the responsibility of the parties *and the court* to ensure that a proper record has been made of both the parties' requests to charge and the court's rulings on those requests.

[5] The verdict form the jury foreman endorsed provides: "The jury finds the issues for the defendants, Robert and Diane Cohen."

[6] Even after the trial, the plaintiff raised the issue of the court's decision not to submit her interrogatories to the jury in her motion to set aside the verdict, in a brief in support of her motion for a new trial, and in a motion for articulation. In all three, the plaintiff asserted her claim that the trial court improperly had failed to submit the proposed interrogatories to the jury. The defendants filed a brief in support of their objection to the plaintiff's motion for a new trial in which they argued that the interrogatories were redundant and would have confused the jury. They did not claim that the plaintiff failed to preserve her objection to the court's denial of the request for interrogatories. The trial court denied the motion for a new trial by simply adopting the legal basis and factual analysis contained in the defendants' memorandum of law—that the interrogatories were redundant and confusing, not on the ground that the plaintiff had failed to preserve her objection.

[7] The trial court instructed the jury on the duties the defendants owed the plaintiff as an invitee. Those duties included (1) the duty to use reasonable care to inspect and maintain the premises and to make the premises reasonably safe, (2) the duty to warn or guard the invitee from being injured

by reason of any defects that the invitee could not reasonably expect to discover, and (3) the duty to conduct activities on the premises in such a way as to not injure the invitee.

[8] The issue of whether the trial court properly denied her request to charge the jury on the issue of nondelegable duty is not before this court. We did not certify the issue, and, thus, the parties have not briefed it. The Appellate Court will address that claim of error on remand.

---